## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

WESTERN SURETY COMPANY,

      Plaintiff,

v.

TURN KEY LUMBER, INC. a/k/a TURNKEY LUMBER, INC. a/k/a TURNKEY LUMBER CORPORATION, JULIANO FERNANDES as Trustee of the LUNENBURG REALTY TRUST, NINE GREEN REALTY, INC., JULIANO FERNANDES, NATALIA FERNANDES, BOLTON OAK, LLC, and FITZWILLIAM, LLC,

      Defendants,

AND

CITIZENS BANK, N.A., SANTANDER BANK, N.A., BEVERLY BANK, and TD BANK, N.A.,

      Trustee Process Defendants.

CASE NO.

FILED IN CLERKS OFFICE
U.S. DISTRICT COURT
DISTRICT OF MASS.
2019 MAR 29  PM 12: 01

## MEMORANDUM IN SUPPORT OF THE PLAINTIFF'S *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, *EX PARTE* MOTION FOR TRUSTEE PROCESS ATTACHMENT, *EX PARTE* MOTION FOR REAL ESTATE ATTACHMENT, AND *EX PARTE* MOTION FOR ACCESS TO FINANCIAL RECORDS OF THE DEFENDANTS

In this action, the plaintiff, Western Surety Company ("Western" or "Surety"), as surety, seeks to enforce its contractual and common law rights to indemnification and other financial protection against its principal, Turn Key Lumber, Inc. a/k/a Turnkey Lumber, Inc. a/k/a Turnkey Lumber Corporation ("Turnkey"), and other indemnitors pursuant to a written agreement of indemnity. Western executed several surety bonds guaranteeing the obligations of Turnkey under certain construction contracts. Western has received substantial claims on surety

bonds issued on behalf of Turnkey and has made written demand upon the Indemnitors for indemnification, reimbursement, and for the posting of collateral, but the Indemnitors have thus far failed and/or refused to indemnify and otherwise hold Western harmless or post collateral as required. Western has also recently learned that certain of the defendants have undertaken efforts to transfer assets in an attempt to hinder, delay or defraud Western as a creditor. By way of trustee process, writ of real estate attachment, and injunctive relief, Western seeks security for its ultimate recovery against the defendants.

By this Motion, Western seeks immediate and preliminary injunctive relief, including (1) the issuance of an order prohibiting the Defendants from transferring, alienating, selling, encumbering or in any manner disposing of their assets, including their real, personal and intangible property, during the pendency of this case, (2) a trustee process attachment of all the Indemnitors' bank accounts, goods, effects, credits, money, funds or other assets held by Trustee Process Defendants, Citizens Bank, N.A., Santander Bank, N.A., Beverly Bank, and TD Bank, N.A., (3) an attachment on real property owned or controlled by the Defendants, (4) an order requiring the Indemnitors to immediately provide Western access to all of the Indemnitors' financial records, including, without limitation, all records relating to bonded projects, and the identity of all banks or other financial institutions in which they maintains accounts and (5) an order that Juliano Fernandes and Natalia Fernandes provide complete and current personal financial statements disclosing all of their assets, including any real property and the identity of all banks or other financial institutions in or with which they maintain accounts.

The indemnity agreement and applicable law provide Western, as surety, broad rights to protect it from loss, both before and after loss. These rights include the right to demand collateral and be placed in funds to protect against anticipated loss, to be fully indemnified against loss and

expenses incurred on account of issuing the bonds and immediate and unfettered access to the Indemnitors' books and records. Western has incurred such loss and expense and expects to incur significant further liability.

Western's requests for immediate and preliminary injunctive relief are necessary for Western to secure satisfaction of the judgment it will obtain in this action against the Indemnitors. Without that relief, Western will suffer irreparable harm because (1) funds paid to Turnkey for work performed on Western bonded projects may be used for other purposes, (2) Western will have to pay the resulting claims of Project owners, subcontractor and suppliers and (3) assets of the Indemnitors available to make Western whole have and may further be diverted to other purposes. Western's requests for injunctive relief should be allowed *ex parte* because there is clear and immediate danger that the Indemnitors, if provided with notice of Western's attachment efforts, will attempt to evade their payment obligations by transferring assets or otherwise conceal or dissipate their assets.

## STATEMENT OF FACTS

Western is a company that is in the business of, among other things, issuing performance and payment surety bonds to contractors and subcontractors with respect to construction projects. Affidavit of Laurence P. Jortner ("Jortner Aff."), at ¶2, submitted herewith. Turnkey is or was in the business of construction contracting. Id. at ¶3. In early 2018, Western began to provide surety bonds needed by Turnkey in connection with Turnkey's construction business. Id. at ¶4. The bonds issued by Western included, among other bonds, performance bonds guaranteeing performance of Turnkey's work under its bonded construction contracts, and payment bonds guaranteeing payment for labor and materials provided to Turnkey on such bonded projects by its subcontractors and suppliers. Id.

3

The Indemnity Agreement

On or about February 13, 2018, Turnkey, Lunenburg Realty Trust, Nine Green Realty, Inc., Juliano Fernandes, and Natalia Fernandes (collectively, the "Indemnitors"), jointly and severally, executed a written General Agreement of Indemnity ("the Indemnity Agreement") in favor of Western. Id. at ¶5.[1] The Indemnity Agreement was executed by the Indemnitors as an inducement for Western to issue surety bonds. Id. at ¶6. Each of the Indemnitors represented and warranted that they had a substantial, material and beneficial interest in Turnkey obtaining bonds from Western. Id.

The Indemnity Agreement (¶3) provides that the Indemnitors:

> shall jointly and severally exonerate, indemnify, protect, defend and hold the Surety harmless from and against any Claim or Loss which the Surety may incur, sustain or pay, arising from or related to any Bond, any Claim, this Agreement, or any act of Surety to protect or procure any of Surety's rights, protect or preserve any of Surety's interests or to avoid or lessen Surety's liability or alleged liability. This Agreement shall be liberally construed so as to fully protect, exonerate, indemnify and hold Surety harmless from all liability, Claim and Loss. Indemnitors' liability to Surety includes all payments made and all actions taken by Surety under the Good Faith belief that Surety is or might be liable for the amounts paid or the actions taken, or that it was necessary or expedient to make such payments or take such actions, whether or not such liability, necessity or expediency existed.

Id. at ¶7.

The Indemnity Agreement (¶12) further provides:

> Surety has the absolute and unconditional right, power and authority, without notice to or consent of Indemnitors, to determine for itself and the Indemnitors and Principals whether any Claim, Loss, demand, defense, counterclaim or assertion of liability by or against the Surety or any Principal or Indemnitor arising from or

---

[1] A true and correct copy of the Indemnity Agreement is attached to the Affidavit of Laurence Jortner as Exhibit A.

4

related to any Bond or Bonded Contract shall be investigated, paid, performed, settled, compromised, declined, denied, tendered, prosecuted or defended; to act to protect or procure any of Surety's rights, protect or preserve any of Surety's interests or to avoid or lessen Surety's liability or alleged liability; and to take, make, consent to or decline to consent to any assignment. Surety's decision shall be binding and conclusive on Indemnitors.

Id. at ¶8.

In support of the obligations set forth in the preceding paragraph, the Indemnitors further agreed and covenanted in the Indemnity Agreement (¶3) that they shall:

a.      place Surety in funds by depositing with Surety, immediately on demand, collateral security in kind and amount satisfactory to Surety in its sole discretion as Surety determines is necessary or expedient to fully protect Surety from actual or potential liability or Loss, including any increase of such deposit required by Surety. Such funds may be used to pay Loss or may be held by Surety as collateral against potential future Loss . . . ; and

b.      reimburse Surety for any payments made by Surety in the Good Faith belief of their necessity.  Digital or tangible images of drafts, vouchers, spreadsheets, payment records or other evidence of such payments, kept in the ordinary course of business, shall be prima facie evidence of the payment's propriety and of fact and amount of Indemnitors' liability for such payments; and

c.      promptly on Surety's demand procure the full and complete release and/or discharge of Surety from all Bonds and all liability or potential liability in connection with such Bonds.

Id. at ¶9.

The Bonds

As a direct and proximate result of the Indemnitors executing the Indemnity Agreement, and in reliance thereon, Western, as surety, issued various surety bonds on behalf of Turnkey, as principal, relative the following construction projects:[2]

- On or about March 20, 2018, Western issued a performance bond and a payment bond, each bearing Bond No. 30033096, and each in the penal sum of $6,550,000.00, on behalf of Turnkey, as principal, for the benefit of Landmark Urban Construction AL, LLC, as owner, for the construction project known as "The Standard at Auburn," located in Auburn, Alabama ("the Auburn Project"). Id. at ¶11.

- On or about March 27, 2018, Western issued a performance bond and a payment bond, each bearing Bond No. 30039361, and each in the penal sum of $3,357,680.00, on behalf of Turnkey, as principal, for the benefit of Landmark Urban Construction FL, LLC, as owner, for the construction project known as "The Standard at Tampa," located in Tampa, Florida ("the Tampa Project"). Id. at ¶12.

- In or about June 2018, Western, as surety, issued a lien release bond on behalf of Turnkey, as principal, for the benefit of US Framing International, LLC, as obligee, to discharge a mechanics' lien in the amount of $363,239.10 filed by US Framing International, LLC on the Auburn Project. Id. at ¶13

- In or about June 2018, Western, as surety, issued a lien release bond on behalf of Turnkey, as principal, for the benefit of La Cubanita, LLC, as obligee, to discharge a mechanics' lien in the amount of $49,677.68 filed by La Cubanita, LLC on the Auburn Project. Id. at ¶14.

- On or about September 21, 2018, Western, as surety, issued a lien release bond on behalf of Turnkey, as principal, for the benefit of American Builders and Contractors Supply Co., Inc., as obligee, to discharge a mechanics' lien in the amount of $292,084.35 filed by American Builders and Contractors Supply Co., Inc. on the Tampa Project. Id. at ¶15.

---

[2]Copies of the bonds issued by Western and referenced herein are attached to the Jortner Affidavit as Exhibit B.

- In or about October 2018, Western, as surety, issued a lien release bond on behalf of Turnkey, as principal, for the benefit of American Builders and Contractors Supply Co., Inc., as obligee, to discharge a mechanics' lien in the amount of $394,703.29 filed by American Builders and Contractors Supply Co., Inc. on the Auburn Project. Id. at ¶16.

Claims against Western

Western has received performance bond demands from Project owners, several payment bond and lien bond claims from Turnkey's subcontractors and notice of allegations of other unpaid creditors of Turnkey, alleging that Turnkey failed to pay amounts due for labor and materials supplied by those subcontractors. These claims are in excess of four million dollars ($4,000,000) as follows:

- On or about November 20, 2018, Landmark Urban Construction AL, LLC commenced an action against Turnkey and Western in the Superior Court of Clarke County, GA seeking damages in the amount of $1,580,438.10 against Western on the performance bond issued with respect to the Auburn Project, which was served on or about December 5, 2018 on Western. This case has since that time been removed to the United States District Court for The Middle District of Georgia and is currently pending in that federal Court. Id. at ¶17.

- On or about February 25, 2019, in an action pending in the Eighth Judicial Circuit in Florida, Landmark Urban Construction FL, LLC asserted a third party claim against Western seeking damages in the amount of "no less than $1,289,061.64" relating to performance bond claims on the Tampa project and an additional $110,925 for their payment of Sims Crane, one of Turnkey's job creditors on the Tampa project. Id. at ¶18.

- Southway Crane & Rigging-Macon, LLC d/b/a Southway Crane & Rigging ("Southway") made a claim on the payment bond issued with respect to the Auburn Project in the principal amount of $98,509.20. With the Principal's approval and cooperation, Western paid $102,000 in full settlement of this claim and Turnkey has reimbursed Western $25,000 of that amount, leaving Western with a current out of pocket loss of $78,000 on its said loss payment. Id. at ¶19.

7

- La Cubanita, LLC has made a claim on the payment bond for the Auburn project and a claim on the lien release bond issued with respect to the Auburn Project in the amount of $49,677.68. Id. at ¶20.

- On or about August 8, 2018, US Framing International, LLC commenced suit against Turnkey and Western in the Circuit Court of Lee County, AL alleging non-payment of $591,484.27 against a Transfer of Lien Bond issued by Western. These claims are also related to the Auburn job on which there is a payment bond. Id. at ¶21.

- On or about December 27, 2018, American Builders & Contractors Supply Co., Inc. ("ABC") commenced suit against Turnkey and Western's Release of Lien Bond issued by Western in the Circuit Court of Lee County, Alabama with Turnkey as named Principal in the principle sum of $308,476 and later amended the Complaint to include claim in same or similar amount against the Auburn project's Payment Bond. Id. at ¶22.

Additionally, to date, Western has incurred consulting fees and expenses in the amount of at least $20,457.04 for the purpose of independently investigating the claims and demands on the bonds. Id. at ¶23. Western has also incurred $9,895.16 in attorney's fees and expenses. Id. at ¶24. Western has been otherwise notified of allegations of Turnkey's unpaid creditors, which are in an alleged amount exceeding $500,000. Id. at ¶25.

On December 18, 2018, Western made a written demand for indemnification, reimbursement and collateral upon the Indemnitors. Id. at ¶26. To date, the Indemnitors have failed and/or refused to indemnify, reimburse or provide the requested collateral to Western as required by the express terms of the Indemnity Agreement and the common law. Id.

As a direct and proximate result of Western's execution of bonds on behalf of Turnkey, Western expects to suffer substantial, additional losses and expenses, for which the Indemnitors are required to reimburse Western. Id. at ¶27. By reason the claims made on the bonds, and in prosecution of this action, Western expects to sustain further losses in the form of attorney and

8

consultant fees and expenses, all of which are recoverable under the specific terms and conditions of the Indemnity Agreement. Id. at ¶28.

Because Turnkey has failed to respond to Western's demand and otherwise has ceased communicating with Western, Western is in fear of incurring liability on account of the failure or inability of Turnkey, as principal, to satisfy its obligations on the contracts underlying the bonds. Id. at ¶29.

Western is reasonably likely to prevail on the merits of its claims against the Indemnitors in an amount in excess of $3,000,000. Id. at ¶30. Western has fully performed its obligations under the Indemnity Agreement and complied with all conditions precedent to commencing this action and seeking the relief requested herein. Id. at ¶31.

### Recent Fraudulent Transfers

In addition to the foregoing, Western very recently learned that certain of the defendants have undertaken efforts to transfer assets in an attempt to hinder, delay or defraud Western as a creditor. As of and prior to November 2, 2018, Juliano Fernandes and Turnkey were aware of their liability to Western by virtue of the aforementioned claims and their obligations under the Indemnity Agreement. As of and prior to November 2, 2018, Turnkey owned real property located at 179 NH Route 12 North, in Fitzwilliam, New Hampshire ("the NH Property"). On November 2, 2018, the defendant, Turnkey, transferred the NH Hampshire Property to Fitzwilliam, LLC. See Affidavit of Eric H. Loeffler, Exhibit A, submitted herewith. Fitzwilliam, LLC has the same principal address as Turnkey; namely, 305 Leominster Shirley Road, Lunenburg, Massachusetts. Juliano Fernandes is the Manager of Fitzwilliam, LLC. Id., Exhibit B. According to the NH Department of State, Fitzwilliam, LLC is not in good standing. Juliano Fernandes and Turnkey fraudulently transferred the NH Property with actual intent to hinder,

9

delay or defraud Western as a creditor of Turnkey, and transferred the NH Property without receiving a reasonably equivalent value in exchange for the transfer at a time when Turnkey believed or reasonably should have believed that it had or would incur debts beyond its ability to pay, thus rendering the conveyance fraudulent as to Western within the meaning of the New Hampshire Uniform Fraudulent Transfer Act ("NH-UFTA").

Additionally, as of December 10, 2018, the defendants, Juliano Fernandes and Natalia Fernandes, owned real property as tenants by the entirety located at Lot 17A, 126 Oak Trail Road, Bolton, Massachusetts ("Lot 17A"). On or about December 10, 2018, the defendants, Juliano Fernandes and Natalia Fernandes, transferred Lot 17A to Bolton Oak, LLC in consideration of one dollar. Id., Exhibit C. Juliano Fernandes formed and is the resident agent of Bolton Oak, LLC. Natalia Fernandes is the Manager and/or the Secretary of State Signatory for Bolton Oak, LLC. Id., Exhibit D. At the time of the transfer, Juliano Fernandes and Natalia Fernandes were aware of their liability to Western by virtue of the aforementioned claims and their obligations under the Indemnity Agreement. Juliano Fernandes and Natalia Fernandes fraudulently transferred Lot 17A with actual intent to hinder, delay or defraud Western as a creditor, and transferred Lot 17A without receiving a reasonably equivalent value in exchange for the transfer at a time when they believed or reasonably should have believed that they had or would incur debts beyond their ability to pay, thus rendering the conveyance fraudulent as to Western within the meaning of the Massachusetts Uniform Fraudulent Transfer Act ("MA-UFTA").

## ARGUMENT

### A.    MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION.

Fed. R. Civ. P. 65 provides this Court with the power to issue preliminary injunctions and temporary restraining orders. "In evaluating a motion for a temporary restraining order, the Court considers the same four factors that apply to a motion for preliminary injunction: the likelihood the movant will succeed on the merits, whether the movant is likely to suffer irreparable harm in the absence of preliminary relief, the balance of equities, and whether an injunction is in the public interest." Commerce Bank & Trust Co. v. Prop. Adm'rs. Inc., 252 F. Supp. 3d 14, 16 (D. Mass. 2017) (citing Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011)). "While all four factors must be weighed, the moving party's likelihood of success on the merits is 'the touchstone of the preliminary injunction inquiry.'" Id. (quoting Philip Morris, Inc. v. Harshbarger, 159 F.3d 670, 647 (1st Cir. 1998)).

The facts of this case demonstrate that Western is entitled to preliminary injunctive relief prohibiting the Indemnitors from transferring, alienating, selling, encumbering or in any manner disposing of their assets, including their real, personal and intangible property, except in the ordinary course of business or with the prior written approval of Western or this Court.

### 1.    Western Is Likely To Succeed On The Merits Of Its Claims.

The core claim asserted herein by Western is its claim for contractual indemnity under the Indemnity Agreement executed in Western's favor by the Indemnitors and upon which Western relied in extending credit to Turnkey in issuing the Bonds. It is well settled in Massachusetts and elsewhere that a surety is entitled to indemnification for payments made to discharge its principal's obligations. See Pearlman v. Reliance Ins. Co., 371 U.S. 132, 137

(1962); Admiral Drywall, Inc. v. Cullen, 56 F.3d 4, 5 (1st Cir. 1995). The Supreme Judicial

Court of Massachusetts has long held, in construing indemnity agreements similar to the one

executed here by the Indemnitors, that "[i]t is plain that the broad language of [the indemnity

clause] manifests an intention to provide comprehensive protection to the [surety] for any losses

which it might sustain because of its obligations on these surety bonds." Peerless Cas. Co. v.

Marinucci Bros. & Co., 336 Mass. 691, 695 (1958), citing Curtis v. Banker, 136 Mass. 355, 359

(1884) and Hartford Accident & Indemnity Company v. Casassa, 301 Mass. 246, 255 (1938); see

also Hartford Accident and Indem. Co. v. Millis Roofing and Sheet Metal, Inc., 11 Mass. App.

Ct. 998, 999 (1981) ("The broad language of the indemnity agreement reflects an intention to

provide comprehensive reimbursement to the bonding company of money expended by it in

connection with claims against [the principal]").

  This court and the First Circuit have also uniformly applied these standards in enforcing

identical indemnity claims by sureties.  See, e.g., Fid. & Guar. Ins. Co. v. Star Equip. Corp., 541

F.3d 1, 7 (1st Cir. 2008) ("Massachusetts courts have held that a surety seeking indemnification

based [upon] such an agreement is entitled to judgment as a matter of law provided that it acted

in good faith in incurring the expenses for which it seeks indemnity"); Travelers Casualty and

Surety Company of America, Inc. v. Jadum Construction, Inc., 2003 WL 21653368, *2 (D.

Mass. 2003) (O'Toole, J.); Fidelity and Guaranty Insurance Company v. Boustris, 2010 WL

4183879, *3 (D. Mass. 2010) (Stearns, J.); North American Specialty Ins. Co. v. MPF Corp.,

2010 WL 5452721, *3 (D. Mass. 2010).

  By virtue of the clear and unambiguous provisions of the Indemnity Agreement,

including Paragraphs 3 and 12 (quoted above), Western is entitled (1) to indemnification from

each of the Indemnitors, jointly and severally, for all payments made under the Bonds and (2) to

the immediate payment by the Indemnitors to Western of $3,000,000.00 as additional collateral to secure Western against its anticipated losses. The claims at issue are contractual and clearly meritorious. Western has been notified of millions of dollars of unpaid owner, subcontractor and other claims. Given the terms of the Indemnity Agreement, it could not be clearer that Western likely will succeed on the merits of its claims against the Indemnitors.

### 2. Western Will Suffer Irreparable Harm If The Requested Relief Is Denied.

The purpose of preliminary injunctive relief is "to preserve the status quo pending final relief and to prevent irreparable injury to the plaintiff . . . ." Am. Bd. of Psychiatry and Neurology, Inc. v. Johnson-Powell, 129 F.3d 1, 4 (1st Cir. 1997). "'Irreparable injury' in the preliminary injunction context means an injury that cannot adequately be compensated for either by a later issued permanent injunction, after a full adjudication on the merits, or by a later-issued damages remedy." Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 76 (1st Cir. 2005); see GTE Prods. Corp. v. Stewart, 414 Mass. 721, 724 (1993) ("In determining the harm to the plaintiff, the court need consider only the harm that would not be redressed by final relief"). In St. Paul Fire & Marine Ins. Co. v. Ellis & Ellis, the Court issued a preliminary injunction, holding that:

> [The plaintiff] is entitled to reasonable security that its claim will
> not be made worthless, despite its merits, because prior to the
> conclusion of the case the defendants' assets should be dissipated.
> Should that occur, it would be the kind of harm that is irreparable.

951 F. Supp. 5, 6-7 (D. Mass. 1996); see Fleet Nat'l Bank v. Rapid Processing Co., Inc., 643 F. Supp. 1065, 1066 (D. Mass. 1986) (where damages would be inadequate because defendant's assets are in danger of depletion or dissipation, a preliminary injunction is warranted).

Pursuant to the Indemnity Agreement (¶18), the Indemnitors specifically acknowledged Western's right to specific performance and injunctive relief in enforcing the terms of the Indemnity Agreement:

> Indemnitors acknowledge that the failure of Indemnitors, collectively or individually, to perform or comply with any provision of this Agreement shall cause irreparable harm to Surety for which Surety has no adequate remedy at law. Indemnitors agree that Surety shall be entitled to injunctive relief and/or specific performance, and Indemnitors waive any claims or defenses to the contrary.

Here, if the temporary restraining order and preliminary injunction are not granted, there is a grave risk that Western will suffer irreparable harm. Based upon the claims received to date, and known outstanding payables, Western's loss could exceed $3 million or more. To date, the Indemnitors have not provided Western with collateral despite demand. Moreover, as discussed below, Western very recently learned that the defendants, Juliano and Natalia Fernandes, transferred real property valued at more than $250,000 into an LLC owned and controlled by them, but not an indemnitor to Western, for nominal consideration.

Preliminary injunctive relief is necessary to allow Western to mitigate its loss and protect its rights.

### 3. The Harm Western Seeks To Avoid Far Outweighs Any Inconvenience To The Indemnitors.

The irreparable harm Western seeks to avoid far outweighs any risk of harm that a restraining order and preliminary injunction might cause the Indemnitors. The requested injunctive relief will not prevent the Indemnitors from operating in the ordinary course of business; it merely will prevent them from improperly dissipating their assets and ensures that funds are used to pay the Turnkey subcontractors and suppliers on bonded projects.

**B.    MOTION FOR APPROVAL OF TRUSTEE PROCESS ATTACHMENT.**

Fed. R. Civ. P. 64 permits plaintiffs such as Western to avail themselves of prejudgment remedies that are available under the law of the state where the court is located.  Metro. Prop. and Cas. Ins. Co. v. Boston Reg'l Physical Therapy, Inc., 550 F. Supp. 2d 199, 201 (D. Mass. 2008) (quoting Fed. R. Civ. P. 64).  Under Massachusetts law, trustee process may be entered,

> upon a finding by the court that there is a reasonable likelihood
> that the plaintiff will recover judgment, including interest and
> costs, in an amount equal to or greater than the amount of the
> trustee process over and above any liability insurance shown by the
> defendant to be available to satisfy the judgment.

Mass. R. Civ. P. 4.2(c); see also M.G.L. c. 246, §1 et seq.  "The central issue to be considered by the court is whether the plaintiff 'is likely to prevail on the merits and obtain damages in the necessary amount.'"  Nat'l Ass'n of Gov't Emps., Inc. v. Nat'l Emergency Med. Servs. Ass'n, Inc., 2013 WL 3563528, at *3 (D. Mass. July 10, 2013) (quoting Aetna Cas. and Sur. Co. v. Rodeo Autobody, 138 F.R.D. 328, 332 (D. Mass. 1991)).

### 1.    There Is A Reasonable Likelihood That Western Will Recover Judgment Against The Indemnitors In An Amount Equal To Or Greater Than The Amount Of The Requested Attachment.

As set forth in above, Western has made the requisite showing of likelihood of recovering a judgment in the amount requested.  Western has received performance bond demands from Project owners, several payment bond and lien bond claims from Turnkey's subcontractors and notice of allegations of other unpaid creditors of Turnkey, alleging that Turnkey failed to pay amounts due for labor and materials supplied by those subcontractors.  These claims are in excess of four million dollars.  Western's demands for indemnity, reimbursement and collateral from the Indemnitors have not been met.  Western is reasonably likely to recover against the Indemnitors in the amount of at least $3,000,000, the amount of the requested attachment.

Further, Western has submitted with its motion an Affidavit pursuant to Mass. R. Civ. P. 4.2(g) to show that it knows of no liability insurance available to satisfy the amount of the requested attachment. In addition, under Massachusetts law, a plaintiff such as Western need not file a bond in an action for trustee process where the complaint states that the action is for money due under a contract in writing. M.G.L. c. 246, §1; Mazzola v. Kurkiian, 361 Mass. 886 (1972). Thus, because Western's Complaint against the Indemnitors seeks money due under the terms of a contract in writing (i.e., the Indemnity Agreement), no bond is required.

### 2. The Facts Warrant Issuance Of Attachments Without Notice To The Indemnitors.

Pursuant to Mass. R. Civ. P. 4.2(g), an order approving trustee process for a specific amount may be entered *ex parte* when a plaintiff demonstrates that, there is a clear danger that the defendant, if notified in advance of the attachment on trustee process will withdraw the goods or credits from the hands and possession of the trustee and remove them from the state or will conceal them, or . . . there is immediate danger that the defendant will dissipate the credits, or damage or destroy the goods to be attached on trustee process.

By virtue of (1) Turnkey's financial instability (2) Turnkey's failure to post collateral or reimburse Western for its losses, costs and expenses it has incurred and will incur as a result of issuing the Bonds to Turnkey, and (3) the recent transfer of real properties in an attempt to hinder, delay or defraud Western as a creditor, there is clear and immediate danger that the Indemnitors, if provided with notice of Western's attachment efforts, will attempt to further evade their payment obligations or otherwise conceal or dissipate their assets. In light of these circumstances, an *ex parte* order of attachment by trustee process, and attachment of real property as requested below, is necessary to protect Western.

C.    **MOTION FOR REAL ESTATE ATTACHMENT**.

Again, Rule 64 of the Federal Rules of Civil Procedure provides, in relevant part, that

"[a]t the commencement of and throughout an action, every remedy is available that, under the

law of the state where the court is located, provides for seizing a person or property to secure

satisfaction of the potential judgment." Fed. R. Civ. P. 64. Rule 4.1(a) of the Massachusetts

Rules of Civil Procedure provides, in relevant part, that "real estate . . . may, in the manner and

to the extent provided by law, but subject to the requirements of this rule, be attached and held to

satisfy the judgment for damages and costs which the plaintiff may recover." Mass. R. Civ. P.

4.1(a).

Further, the Court may approve an attachment upon a finding "that there is a reasonable

likelihood that the plaintiff will recover judgment, including interest and costs, in an amount

equal to or greater than the amount of the attachment over and above any liability insurance

shown by the defendants to be available to satisfy the judgment." Mass. R. Civ. P. 4.1(c); Int'l

Ass'n of Bridge, Structural and Ornamental Iron Workers v. Burtman Iron Works, Inc., 164

F.R.D. 305, 306-07 (D. Mass. 1995).

As set forth in above, Western has made the requisite showing of likelihood of recovering

a judgment in the amount requested, and the lack of any liability insurance to cover any potential

judgment.  The properties sought to be attached are as follows:

Upon information and belief, the defendants, Juliano Fernandes and Natalia Fernandes,

are the owners of record of real property located at 376 Water Street, Clinton, Massachusetts

("the Water Street Property"), Worcester County Registry of Deeds, Book No. 46664, Page No.

75.  Upon information and belief, the Water Street Property has a fair market value of

approximately $313,000.00.

Upon information and belief, the defendant, Lunenburg Realty Trust, is the owner of record of real property located at 305 Leominster Shirley Road, Lunenburg, Massachusetts ("the Shirley Road Property"), Worcester County Registry of Deeds, Book No. 8149, Page No. 126. Upon information and belief, the Shirley Road Property was assessed in 2018 at a value of $567,100.00.

Upon information and belief, the defendant, Nine Green Realty, Inc., is the owner of record of real property located at 115 Coburn Avenue, Gardner, Massachusetts ("the Coburn Avenue Property"), Worcester County Registry of Deeds, Book No. 52818, Page No. 162. Upon information and belief, the Coburn Avenue Property was purchased in 2014 for approximately $200,000.00.

Western is also entitled to real estate attachments on the property located at Lot 17A, 126 Oak Trail Road, Bolton, Massachusetts, and the property located at 179 NH Route 12 North, in Fitzwilliam, New Hampshire, pursuant to the MA-UFTA and the NH-UFTA.

In light of these circumstances, an order of attachment of the aforementioned properties is necessary to protect Western.[3]

### D.    MOTION FOR ACCESS TO THE INDEMNITORS' BOOKS AND RECORDS.

Pursuant to the Indemnity Agreement (¶11) the Indemnitors agreed to provide Western with complete access to the Indemnitors' books, records and accounts:

> Surety and its designated agents shall have free access to the book
> and records of Indemnitors and Principals, including tangible,
> electronic and digital records and any related applications, access

---

[3] Western does not seek an *ex parte* order of attachment regarding the NH Property because it appears that N.H. Rev. Stat. §511-A requires that "[i]n civil actions in which pre-judgment attachment is authorized, except as otherwise provided in replevin actions, a defendant shall be given notice and an opportunity for a preliminary hearing before any pre-judgment attachment . . . shall be made." Accordingly, Western requests that the requested attachment as to the NH Property be considered following notice to the Defendants.

18

or licenses to retain and utilize such records, at reasonable times
and on reasonable notice.

Notwithstanding their explicit obligations under the Indemnity Agreement, the

Indemnitors have failed and/or refused to fully perform their obligations under the Indemnity

Agreement, including but not limited to their obligation to provide Western and its designated

agents with "access to the books and records" of the Indemnitors and Principals.  The

Indemnitors' deliberate failure to cooperate is a violation of the Indemnity Agreement.

Therefore, Western requests that his Court enter an Order (1) requiring the Indemnitors to

immediately provide Western and its designated agents access to all of the Indemnitors' books

and financial records, including, without limitation, all records relating to the bonded projects,

the identity of all banks or other financial institutions in which the Indemnitors' maintain

accounts and (2) requiring the Fernandes' to both provide current, sworn financial statements.

**CONCLUSION**

WHEREFORE, Western respectfully requests that this Honorable Court:

1. Enter an order, *ex parte*, prohibiting the Defendants from transferring, alienating,
   selling, encumbering or in any manner disposing of their assets, including their real,
   personal and intangible property, except in the ordinary course of business or with the
   prior written approval of Western or this Court;

2. Enter an Order of Attachment by Trustee Process, *ex parte*, of all bank accounts,
   goods, effects, credits, money, funds or other assets of the Indemnitors held by
   Trustee Process Defendants, Citizens Bank, N.A., Santander Bank, N.A., Beverly
   Bank, and TD Bank, N.A. in the amount of $3,000,000.00;

3.  Enter an Order of Attachment, *ex parte*, of the Water Street Property, the Shirley Road Property, the Coburn Avenue Property, and Lot 17A in an amount of $3,000,000.00;

4.  Enter an Order of Attachment of the NH Property in an amount of $3,000,000 after notice and a hearing on Western's request;

5.  Enter an Order, *ex parte*, requiring the Indemnitors to immediately provide Western access to all of the Indemnitors' financial records, including, without limitation, all records relating to the bonded projects, the identity of all banks or other financial institutions in which the Indemnitors' maintain accounts;

6.  Enter an Order, *ex parte*, requiring Juliano Fernandes and Natalia Fernandes to provide current, sworn personal financial statements disclosing all of their assets, including the identity of all banks or other financial institutions in or with which they maintain accounts, or accounts are maintained on their behalf;

7.  Enter an Order granting such other and further relief in favor of Western as is just and appropriate.

**WESTERN SURETY COMPANY,**

By its attorneys,

Eric H. Loeffler, BBO #641289
DAVIDS & COHEN, P.C.
40 Washington Street, Suite 20
Wellesley, MA 02481
(781) 416-5055
eloeffler@davids-cohen.com

Dated:     March 29, 2019